MANN v. FARNUM, EXECUTRIX.

| 17  427 |
| 24  232 |

PROMISE IMPLIED FROM CIRCUMSTANCES.—When a person performs
work or furnishes material beneficial to the property of another, a
promise to pay therefor by the owner may sometimes be implied
from circumstances; but the circumstances must be such as fairly
indicate the owner's intention to pay, or such as equitably estop
him from denying his liability to pay; the mere fact that the prop-
erty has been improved will not suffice.

*Error to District Court of Arapahoe County.*

ACTION to recover for labor and material and to foreclose
lien upon real estate.

The plaintiff Mann brought suit against one Charles B.
Farnum to recover for filling and grading certain lots.   The
original complaint was founded upon an express oral agree-
ment between Farnum, the owner of the lots, and one
Quimby, the plaintiff being the assignee of Quimby.   The
whole amount claimed, based upon an agreed price per cubic
yard, amounted to $653.33.   Payment of $400 admitted;
judgment and decree of foreclosure for balance prayed for.

After one trial by amendment to his complaint and for a
second cause of action plaintiff declared for 2022 cubic yards
of earth furnished by Quimby to the defendant at his re-
quest for the grading of defendant's lots, alleged that the
value of said work and labor done was twelve and one half
cents per cubic yard, and that the same was due and unpaid.

Defendant's answer admitted a contract between himself
and Quimby for certain material, at the price alleged; but
claimed that the contract was limited to such earth as should
be necessarily taken and removed in excavating and prepar-
ing a certain club house then about to be erected in the city
of Denver; denied contracting for any other or further ma-
terial; and alleged full payment to the extent of the con-
tract.

The findings and judgment of the district court were in

favor of defendant. The plaintiff brings the case to this court by writ of error.

Mr. ENOS MILES and Mr. J. J. MANN, for plaintiff in error.

Mr. L. S. DIXON, and Messrs. RIDDELL, STARKWEATHER & DIXON for defendants in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The principal assignments of error are, to the effect, that the finding and judgment of the court are contrary to the law and the evidence.

The trial court was fully justified in finding that the original contract between Farnum and Quimby was limited to the amount of earth to be taken from the club house excavation. It is true, Quimby in his oral testimony states that Farnum promised to pay him for all the dirt he (Quimby) would put on the lots, or for sufficient to grade them; but Quimby's letter of April 9, hereafter referred to, is a plain distinct corroboration of Farnum's answer and testimony in respect to the terms of the original contract.

The contract was made orally between the two men in Denver in March 1887 ; Farnum was then about going away to be gone several months. Farnum admits that he said to Quimby, at the time, that if he (Quimby) got other excavating to do, so that he could furnish dirt particularly cheap for filling, to let him (Farnum) know, and perhaps they could agree upon terms for further filling and grading.

While Mr. Farnum was away, Quimby wrote him under date of April 9, 1887, stating, in substance, that he had placed nearly all the earth from the club house excavation upon Farnum's lots, and stating further that he had a still larger basement to excavate, and that if he (Farnum) would like to have a portion of the dirt put upon his lots at the same price agreed upon for the other, subject to supervision and

measurement by D. Fletcher to telegraph to him (Quimby) at once. Mr. Fletcher was Farnum's agent for the sale of the latter's property.

Farnum did not telegraph Quimby, but on April 22, 1887, he wrote Fletcher and referring to Quimby's letter of the 9th instant, said: "Please consider the matter for me and do with Mr. Quimby as you think best, keeping my interests well in mind." The evidence shows that Quimby placed about 2500 or 3000 yards of earth from the club house excavation upon the Farnum lots, and that he also placed considerable earth upon said lots from other excavations. It appears that Fletcher caused the filling to be measured, and wrote Farnum in reference to Quimby's claim for the additional filling.

By letter to Quimby dated June 16, 1887, Farnum expressed surprise at his advices from Fletcher concerning Quimby's claim, denied emphatically that he had agreed to pay for anything more than the club house dirt, sent Quimby a draft for $400, "in payment of filling from the club house lot," and concluded thus: "On balance I think it better stand till we meet and we can fix it up without difficulty, I am sure." It appears that Farnum before leaving in March had undertaken to ascertain approximately from the architects what the dirt taken from the club house would amount to.

Under the circumstances above stated, it was important on the trial to determine whether or not there had been any promise express or implied on the part of Farnum or his agent to pay for material furnished by Quimby in addition to the club house material.

In his testimony Quimby does not claim that he received, subsequent to his letter of April 9, any express direction from Farnum or from his agent authorizing him (Quimby) to furnish any filling other than the club house material, nor does he claim any express promise of payment for any additional material so furnished.

Fletcher testified in respect to Quimby's work that he

caused the earth filling made upon the Farnum lots to be measured. His testimony was in substance: I sent men to measure the earth placed upon Farnum's lots by Quimby— to measure the number of yards that had been put in—all dirt—I don't know where it came from. All I recall about the whole matter is that a certain amount of dirt was to be put in there at twelve and a half cents· a yard. I understood it was to be the dirt from the club house cellar; the top dirt Mr. Quimby wanted to use elsewhere, and my impression was that about that amount of dirt had been put in. Mr. Quimby, I think, claimed that he had put in more on some agreement with Mr. Farnum, that he was to be paid a certain amount. In regard to that I told him to get it from Mr. Farnum in writing; that I had no authority to justify him in going ahead with more dirt. The only contract I knew of was for 3000 loads of dirt which Mr. Farnum was to pay for.

Mr. Quimby claimed that he had the right to put on more at twelve and a half cents a yard. I told him I knew nothing about it; never contracted with him in regard to it, or authorized him to put on any more, and told him that whatever conversation he had, he must rely on that alone.

A further discussion of the evidence is unnecessary. When a person performs work or furnishes material beneficial to the property of another a promise to pay therefor by the owner may sometimes be implied from circumstances; but the circumstances must be such as fairly indicate the owner's intention to pay, or such as equitably estop him from denying his liability to pay; the mere fact that the property has been improved will not suffice, else the owner might be charged with a debt, or his estate with an encumbrance, without his knowledge or consent.

Upon due examination we find nothing in the record of this cause sufficient to warrant an appellate court in reversing the finding and judgment of the trial court upon the evidence.

The rulings of the court upon the admission and rejection of testimony, so far as the same are assigned for error, need

not be discussed in detail; they involve no novel or difficult questions of law; and a careful consideration of them fails to disclose any substantial error.   The judgment of the district court must be affirmed.

*Affirmed.*