BESHOAR v. THE BOARD OF COUNTY COMMISSIONERS OF LAS ANIMAS COUNTY.

1. STATUTORY CONSTRUCTION.
In construing a statute regard must be had both to the evils which were aimed at and the objects sought to be accomplished.

2. SAME—COUNTIES—ANNUAL APPROPRIATION RESOLUTION.
No specific words are essential to constitute an appropriation. No precise form need be used to make the resolution effective.

3. ULTRA VIRES.
Whether the defense of *ultra vires* is available to a county after the contract has been performed and the county has had the benefit and results thereof is questionable.

*Error to the District Court of Las Animas County.*

THE proprietor of the Daily and Weekly Advertiser, a paper published in Las Animas county, made a contract with the board of county commissioners to publish all advertisements of the county for the year 1893 at the legal rate prescribed by the statute. The agreement was the result of a bid, which was put in by the manager of the paper on the 13th of January, 1893, offering to do the work at a specified rate. Three days afterwards, on the 16th, the full board met and opened the bids. There were bids from three publishers of three different papers. On examination, the board concluded the bid of the Advertiser the most advantageous for the

county, and it was accepted by a vote of 4 to 1 of the com-missioners. The bid and the proceedings of the board were made matters of record, and everything was done to make the bid and its acceptance a binding agreement on the parties. During the year, according to the general provision of the statute, the county treasurer furnished the Advertiser the delinquent tax list, which was published in accordance with the terms of the agreement. In the ensuing January the paper presented its claim for $2,139.15 for adjustment and allowance. The board refused to either pay or allow it, or any part of it. The refusal was based on what the board claimed was the illegality of the letting. In the preceding year, the board had attempted to comply with the require-ments of the act of 1891, respecting the methods by which counties should contract and the steps which the governing authorities must pursue in order to enter into binding obli-gations. This act will be commented on in the opinion. On the 18th day of October, 1892, at a regular session of the board of county commissioners of Las Animas county, they passed a resolution in the following terms:

" Whereas, under and by virtue of an act of the general assembly of the state of Colorado, page 111, section 1, Session Laws of 1891, of the state of Colorado, we, the board of county commissioners, are required in the last quarter of each fiscal year to pass a resolution to be termed the annual appro-priation resolution for the next fiscal year:

" Now therefore, be it remembered, that on the 18th day of October, 1892, the same being one of the days of the regu-lar October term of the board of county commissioners of Las Animas county, in regular session assembled and in pur-suance of the act above referred to,

" Be it resolved, that we, the said board of county com-missioners, do make, levy and appropriate the following various amounts for the different purposes for the next fis-cal year beginning January the 1st, 1893, and base our ap-propriation and levy upon a total assessed valuation of all the real and personal property in said Las Animas county,

which is valued at six million, seven hundred and forty-one thousand and thirty-nine dollars, and we hereby levy and appropriate as follows, to wit:

| | | |
|---|---|---:|
| For ordinary county revenue . | . 6 mills | $40,446.23 |
| For interest on county bonds | . 1 mill | 6,741.00 |
| For road fund . . . | . 1½ mills | 10,111.51 |
| For general county school fund . | 3 mills | 20,223.11 |
| For unforeseen contingencies . | . ½ mill | 3,370.50 |
| For outstanding indebtedness | . 2.9 mills | 14,156.10 |
| For the support of the poor . | . 1 mill | 6,741.00 |
| For world's fair exhibit . | . 0.1 mill | 674.10 |
| For state tax . . . . | . 4 mills | 26,964.00 |

" The above and foregoing resolution being duly submitted to said board at their regular session as aforesaid, voted as follows, to wit: For said resolutions ayes 4, nays none.

" In witness whereof we, the said board of county commissioners, each for himself has hereunto set his hand and seal at Trinidad, Colorado, this 18th day of October, A. D. 1892.

(Signed)    " THOMAS COOK, Chairman.
            " W. A. COLLINS.
            " SOL H. JAFFA.
            " J. RAMON AGUILAR."

The resolution was recorded in the records of the board, and the bid and agreement, which has been before referred to, was supposed to have been made by virtue of the authority found in the resolution. When the board refused to pay, the proprietor of thé paper brought suit, and in his complaint set up these various matters. The suit was contested, but in the answer no defense was put in, save what resulted, if at all, from an averment of a failure to appropriate any moneys for the payment of the ordinary expenses of the county. The levy for the year 1893 was a little upwards of $40,000. The court found as a matter of fact that only about $30,000 was applied to the payment of the ordinary

current expenses for the fiscal year of 1893. In the month of January, 1894, a good many claims were presented to the board, and at the same time with the claim put in by the Advertiser, and a very considerable sum, amounting to nearly $10,000, was ordered to be paid out of the current revenues of the county. On these facts the county had judgment, and the plaintiff prosecutes error.

Mr. W. M. MAHIN and Mr. J. M. JOHN, for plaintiff in error.

Mr. JOHN A. GORDON, for defendant in error.

BISSELL, J., delivered the opinion of the court.

The act of 1891 was in its purpose a very substantial departure from the general plan of the revenue legislation which affects counties. Up to that time the board of county commissioners, which is the governing body, was intrusted generally with full power and discretion to manage, control and regulate the funds of the county and their disbursement. Generally speaking, there was very little restraint put upon them other than what was found in the general enactments which conferred their powers and defined their duties. The laxity of the system resulted in the creation of very large county debts, and this act was evidently passed to restrain and control these bodies in the disbursement of county funds. It is wholly unnecessary to state the act in detail, even though it consists of only five sections. The only portion with which we are directly concerned is a part of the first section:

" The board of county commissioners of each county in this state shall, within the last quarter of each fiscal year, and at the same time that the annual levy of taxes is made, pass a resolution to be termed the annual appropriation resolution for the next fiscal year, in which said board shall appropriate such sum, or sums of money as may be deemed

necessary to defray all necessary expenses and liabilities of such county for the next fiscal year, and in such resolution shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. No further appropriation shall be made at any other time within such fiscal year, nor shall the total amount appropriated exceed the probable amount of revenue that will be collected during the fiscal year."

The evident purpose of this legislation was to compel the board in the last quarter of the fiscal year to consider and decide with great care the levy which should be made and the objects to which the moneys which might be realized from it should be put. In other words, the legislature intended to compel the board of county commissioners to particularize the purposes to which the moneys should be applied. By this means all subsequent diversion of the public funds to illegal uses because of personal, political, or other considerations, was substantially prevented. The contention in the present case is that this resolution, which the board passed in October, 1892, did not amount to an appropriation within the scope and purview of that act. We do not believe the necessary legal construction of the statute compels any such conclusion. In order to determine what construction must be adopted, regard must be had both to the evils which were aimed at and the objects sought to be accomplished. We are likewise entitled to consider the persons to be affected and the general character of these governing bodies as they exist in the various counties in the state. One purpose was to limit the levy to the ordinary and necessary expenses of the county, and the other to secure an antecedent separation of the total revenues to be derived from taxation into the various sums necessary for the different purposes of county government. Another object was to compel the antecedent determination of the exact amount which should be used for the general expenses of the county, as well as the sums which might be applied to other purposes. In arriving at our conclusion we have a right also to consider the impossibility to

determine in advance all the different uses to which the money in the general fund of the county can legitimately be put. Many expenditures are entirely legitimate, even under the act of 1891, and must be paid out of the general revenues of the county, and out of what is known as the " general county fund," which can neither be anticipated, determined or provided for by any specific antecedent appropriation. As suggested, we likewise have a right to consider that the boards are made up many times of men who are not accustomed to legal forms or usages of legislative bodies, and who can hardly be expected to use the accuracy and precision which usually characterizes the work of trained persons in either of those departments. We shall therefore on these lines consider the sufficiency of this appropriation under the act of 1891.

There is another matter to which attention should probably be called, before any citation of authorities or any more general discussion. The general revenue laws of the state provide for the collection of taxes and the enforcement of penalties on well defined lines. If the taxes are not paid at the time they become due, the statute has provided means by which the collection can be enforced through a sale of the property. To effect this, the delinquent tax list must be advertised and the treasurer is directed to prepare the list of delinquents each year and furnish them to a paper for publication, and thereby give notice to the delinquent and an opportunity to other persons to pay the taxes and secure title to the land. It would be impossible otherwise to enforce the collection of taxes. In addition to this general scheme, the Statutes of 1883, section 2872, provide that the board shall allow the amount agreed on, or, if there has been no agreement, shall make a reasonable allowance to the publisher for printing the delinquent tax list. Under these circumstances, we cannot conclude the publication of this list and the payment of the requisite sum therefor to be one of the evils aimed at, though it may possibly be within the scope of the enactment. We may rightfully consider this general legislation and regard it as of considerable force in supporting

the very liberal construction which we put on the proceedings of the board.

As a general proposition, no specific words are essential to an appropriation. This liberal rule of construction has been many times applied where the constitutional provisions are that every law which provides for the imposition of a tax shall distinctly state the object to which it is to be applied. If this rule prevails with reference to a constitutional provision, which has undertaken to restrict the power of the legislature in imposing taxes, it certainly is not inapt to use it in construing an act which has for its general purpose the regulation and control of county expenditures. *The People ex rel. Burrows v. The Supervisors of Orange Co.*, 17 N. Y. 235 ; *The People v. Home Ins. Co.*, 92 N. Y. 328; *McCauley v. Brooks*, 16 Cal. 11 ; *Carr et al. v. The State*, 127 Ind. 204.

The same rule has been substantially adopted in this state and has received the sanction of the supreme court. *City of Leadville v. Matthews*, 10 Colo. 125 ; *In re Continuing Appropriations*, 18 Colo. 192; *The Collier & Cleveland Lith. Co. v. Henderson*, 18 Colo. 259.

According to these authorities, no precise form need be used in order to make the resolution effective within the terms of such an act. If we look to the list alone, undoubtedly we do not find in terms an appropriation for ordinary county purposes. The phraseology adopted by the board is unhappy and inexact, in that it says, "for ordinary county revenue, 6 mills, $40,000." Taken by itself it would look as though the object and purpose of the resolution was simply the settlement of the levy which should be made and a statement of the probable amount to be derived from one of that size and description. The other items mentioned are more specific, and of themselves would necessarily be taken to be both a levy and an appropriation. This is true as to the road fund, interest on bonds, the support of the poor, the world's fair exhibit, and the other items. No one could be misled as to these, because the purpose to which the money was to be put is plainly expressed in the phraseology of the

resolution. If the first item had read, " for ordinary county purposes, six mills, and $40,000," there would be very little hesitation on the part of anybody to conclude the board intended both to fix the amount of the levy and designate the sum which might be used for general county purposes. The intent and purpose of the board is so plainly manifest from the terms of the resolution, we must conclude it was their intention to appropriate $40,000 for general county purposes and to make the levy 6 mills. This does no violence to any recognized canon of construction; it effectuates the evident purpose of the board; it does equity as between these parties, and certainly as between the board and all others to whom they may have paid money for the year 1893. How the board can expend $40,000 for general county purposes on the basis of this appropriation, and then insist, because they are disposed to contest this bill, that they have violated the law and have failed to make any appropriation which can be used for such purposes, is not readily apprehended. The board has either violated the law in every instance where they have paid out a single dollar of that $40,000 for general county purposes, because they made no appropriation whatever, or if it is to be taken as an appropriation within the terms of the statute, they are certainly obligated to pay this bill, if in its amount and by the performance of the contract the account is genuine. The general language of the resolution likewise leads to this conclusion. The act of 1891 is specifically referred to. The words "appropriation" and "levy" are likewise used, and the board evidently intended to comply with the law and to appropriate $40,000 to general county purposes. The bill in suit was undoubtedly a general county purpose and a legitimate and lawful expenditure authorized by the general statutes, which likewise directed the board to pay the sum agreed on for its publication, or to make a reasonable allowance to the printer therefor. If it were at all necessary, we should be inclined to conclude the act of 1891 did not repeal section 2872, and, in the absence of an appropriation, that

the board of county commissioners would be compelled under the law to pay for the printing of the delinquent tax list. The act of 1891 contains no repealing clause, and there is nothing in its terms or in its provisions which would operate by implication or otherwise to repeal the provision of the General Statutes.

We might possibly, also, be inclined to hold, if it were necessary, that this defense of *ultra vires* was not open to the county. The contract has been performed, the county had the benefit and accepted the results, and there is some question under the authorities whether it is open to the county to dispute the claim. *Denver Fire Ins. Co. v. McClelland*, 9 Colo. 11 ; *Hitchcock v. Galveston*, 96 U. S. 341.

The other conclusions furnish a way to dispose of the case which is so entirely satisfactory that we are disinclined to put the decision on the last named ground or to enter on an argument in support of its accuracy or its applicability. It is simply suggested to show that, as a general proposition, it is not open to counties to accept results and refuse to pay for what has been done for them. The practice does not accord with that spirit of commercial honesty which ordinarily characterizes bodies of this description.

We are therefore of the opinion the court erred in holding the defense good and its decision adjudging the resolution insufficient as an appropriation not in accord with the law. The case will therefore be reversed and remanded for a new trial in conformity with this opinion. The county should be permitted to amend its answer and put in such defense to the claim as it may be advised, except as controlled by this opinion.

*Reversed.*