Bissell, J.,
delivered the opinion of the court.
This matter is almost identical in its most salient features with those presented in the case of the People on the relation of Rollins v. The Board of County Commissioners of Rio Grande County, 7 Colo. App. 229, decided at the December term of this court. Rollins brought suit against Grand county in 1890, in the district court of Arapahoe county, and recovered judgment for $9,947.87 and costs. He afterwards transferred the judgment to the New Hampshire Savings Bank, which filed the petition in mandamus. The petition contained the *44 usual averments of the recovery of the judgment, the title of the bank, and stated two written demands on the county commissioners, one on the 10th of December, 1890, and the other on the 1st of September, 1898, demanding the levy of a tax for the payment of the judgment. It was alleged there were no moneys in the treasury applicable to the payment of the judgment, and a refusal of the board to comply with the demand. The value of the taxable property was stated and the petition concluded with the usual prayer. To the alternative writ the board made answer, denying the alleged valuation of the property of the county, and averring that it was less thau $300,000. The refusal to levy the tax was denied, and the county set up the existence of an outstanding indebtedness of about $60,000, of which a little more than half was said to be in judgments. The county also alleged that it had levied a tax for 1894 of three mills on the dollar, which was to be applied to the payment of the plaintiffs’ debt, as well as the other judgments against the county, and that this levy was all that could be reasonably made with due regard to the financial situation of the county and its current indebtedness. On these issues the case went to trial. There was a replication to the answer, which set up the appropriation and levy in October, 1893, for the year 1894, which contained this item: “For paying outstanding warrants and interest, three mills on the dollar.” The plaintiff likewise stated the appropriation made in January, 1894, for the current expenses of the county. In this list there was no statement respecting the outstanding judgments or warrants, or an appropriation of funds for their payment, or the payment of interest. There was no proof presented, except certified copies of these papers with the transcript of judgment and the evidence given by Mr. Parks, on behalf of the plaintiff, and Mr. Jones, on behalf of the defendant.' The plaintiff did not attempt to show the county had refused to levy a tax to pay any part or portion of his judgment or the collection of interest on it, other than what was stated as the result of an interview between Parks on behalf of the bank, *45 and Mr. Rohan, the chairman of the board. This discussion was had in Denver, at the office of Rollins & Sons, at a meeting apparently arranged to discuss the matter of levying a tax. According to this testimony, Rohan refused to make the levy. The case is silent, however, as to any direct action by the board as a body on this matter, other than what may be taken to appear from the levy and appropriation which was made in October, 1893. Whether Rohan had authority to act for the board, or whether what he did was called to the board’s attention and they ratified it, is neither stated nor proved. The tax rolls were exhibited. The financial condition of the county was stated in a general way by Mr. Jones, though what knowledge he had of it is not very clear. Proof was made of the various outstanding judgments, and at the conclusion of the evidence there was a judgment for the relator directing a levy of five mills for the year 1894, and each year thereafter, and the application of the funds derived from this tax to the payment of the relator’s judgment.
The principal question suggested by counsel for the county has been settled adversely to their contention in the case referred to at the commencement of this opinion. In the court below, as well as here, the chief reliance was on the assumed existence of a discretion with regard to the levy of a tax to pay outstanding judgments which could not be controlled by the courts. Since we do not accept this conclusion, the case necessarily turns on a less important proposition. We are asked to go back to the judgment which was recovered by Rollins, and from an inspection of the record ascertain the cause of action stated, and when we have deduced it, decide whether judgment ought to have been rendered in that suit on the warrants which were the subject-matter of the action. This claim is based on some decisions of the supreme court of the United States in what is assumed to be analogous cases, Louisiana v. Mayor of New Orleans, 109 U. S. 285; Wisconsin v. Pelican Ins. Co., 127 U. S. 265; Boynton v. Ball, 121 U. S. 457.
The Louisiana Case was a proceeding by mandamus against *46 the city of New Orleans to compel the payment of a judgment which had. been recovered, for damages inflicted by rioters. There was legislation which deprived the judgment creditors of any means of enforcing their judgment, and they brought mandamus to compel the city to pay the claims. When the matter came before the federal tribunal, the principal contention of the relators was that the legislation which deprived them of a remedy impaired the obligation of their contract, which was a judgment, and was consequently a violation of that provision of the federal constitution which forbids any legislation which shall impair such obligations. The court took the view that though put into judgment, the claim did not grow out of a contract, and was therefore not within the purview of this constitutional provision. It held it to be entirely proper for the court to go behind the entry and look into the record to ascertain the cause of action which resulted in the judgment, and if therefrom it was seen the case was not one of contract, it could then be adjudged within the power of the legislature to deprive the judgment creditor of his execution remedy, or of any other means which the statute might theretofore have provided for the collection of judgments. The result was not arrived at by an undivided court, some of the judges inclining to the opinion that the reduction of the claim to judgment put it into one of the well known legal forms of contract, whereby the case was brought directly within the constitutional inhibition. We are not compelled to follow the majority or express our views as to the strength of the reasoning contained in the dissenting opinions. We do not deem these authorities applicable. If the record of the judgment in the Rollins Case is examined, it only discloses that the suit was brought on county warrants, which are legal obligations of the county, and which, of course, that body must pay, unless they have a defense either against the warrant itself or can abate the suit, because at the time it was brought the parties suing had no right to begin their action. We are unable to determine from the inspection of the record that either one of these two circumstances existed. *47 As was said in the Wisconsin Case, supra, we are bound by the judgment, nor can we go behind it to exahiine into the validity of the claim, but only to ascertain “ whether the claim is really one of such a nature that the court is authorized to enforce it.” In the present case, we cannot say the judgment which Rollins obtained was invalid. On inspection, it appears to be a claim which the court has a right to enforce. The argument that, by putting the warrants into judgment, the holders thereby obtain a preference and are enabled to enforce payment contrary to the right which they acquired when their warrants were presented to the treasurer for registration, is inapplicable in the present case. The warrants are in judgment. The judgment is a claim which the courts have a right to enforce. We have decided collection may be enforced by mandamus when the county authorities refuse to levy a tax in the exercise of the discretion which has been confided to them. We cannot go behind the judgment and ascertain on what it was rendered. Inspection reveals nothing. The county tendered no issue by their return which would justify or permit any investigation of this question. There is nothing wherefrom we can discover the warrants sued on were inferior in right to any which had been antecedently registered, nor can we ascertain that they are illegal, or that there is any legal defense to them, either in bar or in abatement. Whether these things may be made the subject of a plea, and if proven can legitimately control or effect the exercise of the discretion of the court, which must determine what tax shall he levied cannot, without writing what would be obiter dicta, be considered on this hearing. There was neither plea nor proof on this matter. If there were defenses which might have prevented the recovery of the judgment at all, and the antecedent board negligently permitted the judgment to go when it ought to have been defended, we are unable to see how the present board can avail themselves of the neglect or failure of their predecessors. If, on the other hand, there were matters dehors the record, of which there was competent proof which would have stayed the writ, or *48 limited its force and terms, it does not appear in this record. The county neither attempted to plead nor to prove it. If hardship results, the citizens may only condemn their county government. In any event, we are precluded from passing on the question.
There is a matter, however, wherein the case seems to us to he radically defective, and we are compelled to send it back for proof on this question. Wherever a petition is addressed to the court,, which can only be granted in the exercise of its reasonable discretion, the relator is bound to make out a case which calls on the court to exercise its broad powers in this direction. Nothing can be left to presumption or inference. Full proof must be made of all the matters which must be taken into consideration, in order to enable the court to enforce the claims of the relator and protect the rights of the respondent. The petition averred a demand and a refusal. The demand was proven, but there was no evidence of a refusal by the county to levy a tax which should be applied to the payment of the judgment. The answer took issue with the averment. To support his claim to the peremptory writ, the relator was bound to show a refusal of the constituted authorities to act as a board. The certified copies of the proceeding in October, 1893, and January, 1894, did not fill the gap. It has been recently decided by this court, at the January term, in the case of Beshoar v. The Board of County Commissioners of Las Animas County, 7 Colo. App. 444, that the levy and appropriation provided for by the statute may be made in the most general terms, and that any language or phraseology which by construction can be taken to cover the appropriation contended for is enough. In other words, when the board makes its appropriation, it need resort to the use of no technical terms or stated forms, if from what they do their action can be deduced. In the present case, at the meeting in October, there was a provision for paying outstanding warrants and interest. The levy was three mills on the dollar. It may have been the intention of the board to make this levy *49 for the express purpose of paying outstanding judgments and accrued interest. We are not advised whether the action can be taken to cover warrants Avhich Avere not in judgment. The proceedings do not show and there was no proof about it. In any event, it was for the relator to prove a refusal to act. This does not necessarily appear from the, production of those two certified copies. What Mr. Rohan did in no manner bound the board. It was not in evidence that the board had any knowledge of his acts or concurred in what he did. The necessity to show a refusal,is conceded by all the authorities. High’s Ex. Legal Remedies, secs. 13 and 27, et seq.
It may be this will appear to be a very technical reason on which to reverse this judgment, but, in cases of this description, we must hold parties to very strict procedure when they call on the courts to exercise their prerogative and compel the county to levy taxes to pay judgments. We are not entirely clear, nor does this case call for the expression of an opinion, as to the extent to which courts should go in this direction. The power of the courts is somewhat circumscribed and the limits of their authority are not well marked nor clearly defined, though frequently the subject of judicial inquiry. Bright v. Farmers' High Line Canal Co., 3 Colo. App. 170.
While we insist the county cannot so exercise the discretion committed to it by the legislature as to entirely defeat the collection of the debts which have been put into judgment, Ave cannot, on the proof before us, nor with the light afforded by any case submitted to us, indicate, much less announce, the rule by which courts must be guided in their attempts to control the action of the county authorities. Counties must not be bankrupted, nor can they be permitted to repudiate their legitimate debts. To enforce the right without accomplishing injustice is the very delicate task set to the courts. The creditor must not be permitted to turn the lever of the press to the destruction of the county organization, nor may the county drive the creditor out of its borders and out of the courts in the assumption of a right *50 to exercise a discretion which is another name for the gaunt specter of repudiation. Both creditor and county must be mindful of their pleadings and their proofs, and see to it the courts have exact, full and legal basis for their judgments. In all of these cases great regard must be had to the financial condition of the county, the amount of its taxable property, the necessary annual current expenses of the bodies, and the extent of the burden which the taxpayer can be legitimately called on to endure. These matters cannot be determined without full proof before the court as to the amount of taxable property on which taxes are levied and assessed, the necessary current expenditures, the amount of the outstanding debts and obligations, and the priorities, if any, which the claims have, and the extent of the tax which, under these circumstances, should properly be levied. We are not able from this record to see there was before the court enough data on which to render its judgment for the levy of a tax of five mills. It is quite possible if the proof had been ample in these particulars and the judgment appeared to be wise, discreet, and proper, we might not have felt so strongly the force of the objection that the proof was insufficient to warrant the judgment. This may result in considerable delay and the creditor may suffer, but it is unavoidable. We cannot indicate to the court our judgment of the proper amount of tax to be provided for, nor are we able to say we deem the amount which the court arrived at to be justified by the situation, nor that the amount should be greater or less. The condition of the record prevents any expression of our opinion. What we have said about it is simply to suggest to the trial court the necessity and propriety of requiring full proof of all these matters before entering judgment.
The court erred in entering judgment on the proofs. It will be reversed and the case remanded for further proceedings in conformity with this opinion.

Reversed.