[*No. 3692.*]

### THE ROMAN CATHOLIC CONGREGATION OF THE ANNUNCIATION v. O'LEARY.

AGENCY—ESTOPPEL.

A church congregation having permitted its priest to hold himself out as possessing absolute control of its affairs and power to borrow money upon its credit and to expend the same for its church purposes, cannot repudiate the indebtedness while accepting the benefits derived from the expenditure.

*Appeal from the District Court of Chaffee County.*

APPELLEE in her amended complaint alleges that the defendant is a religious corporation organized and existing under the laws of the state of Colorado; that between the 1, day of July and the 1, day of November, 1892, the plaintiff advanced to the defendant the sum of $3,000 at the special instance and request of the defendant; and that the money was laid out and expended for the use and benefit of the defendant.

The amended answer upon which the case was tried contains a general denial and, also, a special defense based upon an alleged arbitration and settlement of the matters here in controversy; but as this defense is abandoned in this court, it need not be further considered.

The trial was, by consent, had to the court, and resulted in findings in favor of the plaintiff upon all the issues. It was specially found that "plaintiff, prior to the 25, day of October, 1892, advanced to pastor of defendant congregation, for benefit of church, $2,691.50, which was received, accepted and retained by church."

"That defendant received and accepted from plaintiff, prior to October 25, 1892, the sum of $2,691.50, which was appropriated to its use; that plaintiff is entitled to recover $2,691.50, with interest at eight per cent per annum from October 25, 1892; all testimony tending to show that Bishop

Matz ordered the building of addition to parochial school in question by Rev. C. F. O'Leary, disregarded by court, being held insufficient to render defendant liable." Upon these findings a judgment was rendered for the plaintiff. The defendant brings the case here by appeal.

Mr. A. T. GUNNELL and Mr. JOHN A. EWING, for appellant.

Messrs. TALBOT, DENISON & WADLEY, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The evidence shows that the defendant corporation was at the time a religious institution having the control and management of a church and also a parochial school in the city of Leadville in this state; that upon February 22, 1892, Rev. Father C. F. O'Leary took charge of the affairs of the church and school under an appointment from the proper church authority, and continued in control until about the 28, day of October, 1892, when he was stricken with paralysis and relieved from the charge.

It is further shown from the evidence that during these dates Father O'Leary had entire charge of the church and school, that he was entrusted with the collection of the necessary funds to maintain both institutions and with the disbursement of the same; that he employed and discharged teachers at will; and that everything in and about the management of the church and school was under his direction and control.

The record discloses that during this time there was in existence a board of trustees of the defendant corporation, the members of which board resided in Leadville, but during the entire time of Father O'Leary's charge this board did not hold a single meeting, and, so far as the evidence shows, did not attempt in any way to manage or control the business of the corporation, or interfere with Father O'Leary's manage-

ment of the church or school, or to in any manner advise or assist him with reference thereto. To all intents and purposes the priest had absolute and unconditional control of the entire business of both institutions.

Soon after Father O'Leary took charge of this work the number of scholars enrolled at the school exceeded six hundred, and the school building was found too small to accommodate such a large number, and it was deemed necessary to build a large addition to the building. The priest testifies that in building this addition he had the sanction of the bishop, and that it was built at his request. The revenues of the church were at the time barely sufficient to pay the running expenses of the church and school so that the cost of the addition to the school building had to be provided for from other sources. It appears that Father O'Leary raised by personal solicitation about $2,000 of the amount necessary to build the addition, and this being insufficient he borrowed from his sister Julia O'Leary, the plaintiff in this case, the sum of $3,000 to complete the work. He gave to his sister a writing of which the following is a copy:

"LEADVILLE, COLO. July 5, 1892.

"Received of Julia O'Leary Three Thousand Dollars, with interest at the rate of 8 per cent per annum.
"$3,000.00                    C. F. O'LEARY,
                    "Pastor of Annunciation Church,
"Due July 5, 1893.                    "Leadville, Colo."

Father O'Leary swears that it was his intention at the time this money was borrowed to hold a fair and festival after the building was completed for the purpose of raising funds to discharge this indebtedness; but owing to his sudden and unexpected sickness he was prevented from carrying out such intention, and that no fair or festival was held.

It is claimed by the appellant that there is no sufficient proof that the money advanced by Miss O'Leary was ever used in building an addition to the school building; but we regard this claim as untenable upon this record. It affirma-

tively appears that the money loaned by Miss O'Leary was deposited in the American National Bank of Leadville, and that it was paid out by checks drawn by Father O'Leary in settlement of debts contracted in the construction of the building. The plaintiff was able to produce, and did introduce at the trial, checks showing such payments aggregating the sum of $2,691.50, the amount allowed her by the district judge.

It is claimed that this money was borrowed without authority of the trustees, and that there is no evidence that the bishop ever authorized the making of such a loan, and that, for this reason, the proof is not sufficient to uphold the judgment of the court below. A sufficient answer to this contention, we think, is found in the fact that during the eight months that Father O'Leary had charge of the Catholic church and school at Leadville, he had the sole management of the business in connection therewith. The directors were presumably residents of the city of Leadville and attendants upon the church, which adjoined the school building. The city was small, and it is highly improbable that the attention of the trustees was not attracted to this building time and time again as its construction progressed, and as the corporation was without funds and dependent upon meager revenues to pay the daily running expenses of the church and school, they had no right to assume that the building was being constructed free from debt. They permitted Father O'Leary to hold himself out to the world as having absolute control of the affairs of the church and school; they permitted him to raise funds and expend the same as in his judgment seemed proper; and after the building was constructed it was then too late for the church authorities to repudiate the indebtedness, while accepting the benefits derived from the expenditure of this money. *The Union M. Co. v. Rocky Mt. Nat. Bank,* 2 Colo. 248; *Denver Fire Ins. Co. v. McClelland,* 9 Colo. 11; *Manville v. Belden Mining Co.,* 17 Fed. Rep. 425; *Troup's Case,* 29 Beav. 353; *Santa Cruz R. R. Co. v. Spreckles,* 65 Cal. 193; Morawetz on

Private Corporations, §§ 715, 716 and cases cited; 4 Thompson's Comm. on the Law of Corporations, § 5258 and cases cited.

Appellant calls attention to the following from *Union Gold M. Co. v. Rocky Mt. Nat. Bank*, 1 Colo. 531: "Nor is it material that the money was expended in the mine, or that the expenditure was advantageous to the company, unless it is shown that the company had knowledge of the loan and of the expenditure." When the case came up again, as it did upon a second appeal, the opinion of the court was written by the same judge, and in the later opinion he corrected the error in the above statement, and announced the law correctly. See *Union G. M. Co. v. Rocky Mt. Nat. Bank*, 2 Colo. 248.

In that case the money was borrowed by the superintendent for the company, but there was little or no evidence that it was used in the development of the mine, or in the prosecution of work for the company. See dissenting opinion of Mr. Justice Belford, 2 Colo. 266.

The case of *Mann v. Farnum*, 17 Colo. 427, is also relied upon; but the case is not at all analogous to the facts in the case at bar. In that case Farnum contracted with Quimby to deposit upon lots owned by Farnum the dirt to be taken from a certain excavation to be made in lots owned by the Denver Club. After this contract was made, Farnum went abroad and was absent for some time. During his absence he left no agent in charge of this business. Quimby placed the dirt from the excavation upon the lots in question in accordance with his contract, and afterwards raised the lots still higher by putting dirt taken from other places upon them. This was done without the knowledge or consent, express or implied, of Farnum, and the court held that his liability was limited to the amount of dirt contracted for. But the court in that case expressly recognizes the doctrine that when a person performs work or furnishes material beneficial to the property of another, a promise to pay therefor by the owner may sometimes be implied from the

circumstances, and that this will result where the facts are such as equitably estop the owner from denying his liability.

In the district court the effort to defeat the present action was based largely upon the claim that the money was not used for corporate purposes, but plaintiff was able to establish to the satisfaction of that court upon what we consider sufficient evidence that the money was actually used to make a necessary improvement upon defendant's property; and it would certainly be a miscarriage of justice if plaintiff should be held remediless.

Upon principle and authority we think the judgment of the court below is right, and it is accordingly affirmed.

*Affirmed.*