FRENCH *v.* PATRIOTIC INSURANCE COMPANY OF AMERICA.

No. 14,877.

FRENCH *v.* SOUTH BRITISH INSURANCE COMPANY OF NEW ZEALAND.

No. 14,878.

FRENCH *v.* CITY OF NEW YORK INSURANCE COMPANY.

No. 14,879.

FRENCH *v.* ORIENT INSURANCE COMPANY OF HARTFORD.
(111 P. [2d] 893)

Decided February 24, 1941. Rehearing denied March 24, 1941.

276

Mr. PAUL L. LITTLER, for plaintiff in error.

Messrs. MOYNIHAN-HUGHES, Mr. HARRISON LOESCH, Mr. WILLIAM F. HAYWOOD, for defendants in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

BY agreement of the parties four suits against four different insurance companies were consolidated for trial in the district court. These suits were instituted by plaintiff French to recover on four fire insurance policies, each written in the amount of $2,500, insuring him against loss in case of the burning of his hotel and its contents located at Lake City, Colorado. The policies were written one each by the Patriotic Insurance Company of America, Orient Insurance Company of Hartford, Connecticut, City of New York Insurance Company, and The South British Insurance Company, Limited, of New Zealand, and were standard form policies in which the wording differed in no essential respect. At the close of all the testimony introduced on behalf of both plaintiff and defendants, the court directed verdicts for defendants, and upon such verdicts entered judgments for costs against plaintiff. These judgments in the four cases, consolidated for hearing as in the trial court, are before us on review.

The evidence clearly establishes that plaintiff was the owner of the building which, with its contents, represented a value greatly in excess of $10,000, which is the aggregate amount of the four policies. It is conceded by defendants that if plaintiff is entitled to any judgments at all they should be for the full amount of each of the policies. While it is not disputed by defendants that plaintiff was the owner of the building and its contents in which he had an insurable interest, they contend that under the evidence—and the court so found—plaintiff was not the owner in fee simple of the ground upon which the building stood. This contention and

finding, in our opinion, is supported by the evidence and we shall assume such to be the fact.

Each of said policies contains the provision that it is subject to the stipulations and conditions printed on the back thereof, among which, in a page of finely printed stipulations and conditions, is to be found the following: "This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, (a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned by the assured in fee simple." This provision was pleaded by the defendants as a bar to plaintiff's recovery, and by replication plaintiff set out, and by testimony established, facts which he contends show a waiver by defendants of this condition of the policy. The facts upon which he relies to establish such waiver are as follows: That the policies were written through H. S. Price, an insurance agent at Montrose, Colorado; that each was a renewal of a similar policy written by the same company in the same amount for the previous year upon the same property; that at no time had the defendants or either of them asked for, demanded, or received, a written application from plaintiff for any of said fire insurance policies or renewals thereof; that defendants at no time, either before or after writing said policies, made any inquiry of plaintiff, as to the condition of the title to the land upon which the insured building was situated; that plaintiff made no representations of any kind to defendants with respect to his title to such land; that the property was inspected and examined by defendants, and approved for the purpose of said insurance.

█ █ Whether such facts establish a waiver or estop the defendants to rely on the quoted condition of the policies is the crucial issue presented on this review. There is no suggestion of fraudulent representations or concealment on the part of plaintiff. There is no evidence, that had the true fact with respect to plaintiff's

title been declared that defendants would not have approved the risk, written the insurance, or that they would have required a higher premium. There is no claim that the defendants were prejudiced in any manner by the fact that plaintiff did not have a fee simple title to the land. That the provision of the policy relied upon by defendants to defeat recovery may be expressly waived by the agent for the companies is indicated by the qualification in the policy reciting that it shall be void "unless otherwise provided by agreement in writing added hereto."

In any consideration of the question of whether defendants waived the condition, the weight which they attached to the question of title is material. We deem it significant that the daily form reports to the company by Price, the local agent, as to all of the policies involved, save that of the Patriotic Insurance Company, contain certain questions to be answered by the agent with respect to the state of the insured's title. In the daily report form of the Orient Company are the following questions: "Does the building stand on leased ground? When does the lease expire?" The South British Insurance Company asks its agents as follows: "What is assured's title to the ground? If lease, when does it expire? Is there any dispute over title?" The City of New York Insurance Company asks the questions: "Is the building on leased ground? When does lease expire? Has the insured privilege of renewal?" None of these pertinent questions with reference to title were answered by Price in reporting the insurance on this property and yet each one of his reports bears the stamp "Approved," and Price, the agent, says he never was notified otherwise. In his deposition he stated that in twenty years experience in writing fire insurance he had never made any inquiry for the information called for in those questions to be answered by him in reporting the writing of a risk, and further that the companies had never required that in his report he answer the

questions regarding insured's title. If such is the practice of the companies certainly they do not deem the matter of the state of an insured's title of vital importance in passing upon the risk that issuance of a policy imposes upon them. If when the plaintiff sought from the defendants policies protecting him against loss in the event his building should be destroyed by fire—and that is the only reason men buy insurance—and tendered the premiums therefor the companies did not deem the state of his title material to a determination of whether they should accept his money, but tendered to him policies which they then knew, if their contentions be upheld, were void at the time of issuance if his title was less than fee simple, and no consideration for the premiums which he paid, having received his money, and having lulled him into a sense of security until a loss occurred, they should not now be heard to assert the vital materiality of the state of his title to defeat payment on their part for the loss which it is admitted he sustained. The records in the office of the county clerk and recorder disclosed the state of the title of the land upon which insured's building was located and they were open to the world for inspection, including defendants. If they examined such records and were satisfied with the title when they accepted plaintiff's money for premiums, they should be held to a continuance of satisfaction with that title when an obligation falls upon them. We do not hold that the companies, though privileged so to do, were required to examine the records to ascertain if plaintiff had a fee simple title to the land. They might have inquired of him as to his title and if advised that it was in fee simple they then could have relied upon his representation and issued the policies as they did, without any rider or statement therein as to the title of the land on which the building stood. The companies prepared the policies. They are standard, but not statutory, policies. They are approved as to form by the state insurance department ('35 C.S.A.,

c. 87, §61) and we shall assume—for it is not necessary to determine—that the provisions they contain are not illegal, but from this assumption it does not follow that every provision thereof shall be effective or shall have the same effect regardless of the particular facts surrounding their issuance. From the quoted portion of the policies, it is clear that the company does not foreclose itself from writing insurance contracts on buildings where the insured does not have a fee simple title to the ground upon which they are located, neither is there any provision that in all cases policies shall be void if the title is less than fee simple, the stipulation being only that they shall be void "unless otherwise provided by agreement in writing added hereto." It appears from the remarks of the trial Court, at the time of his ruling on the motion for directed verdict, that he was of the opinion that the terms of the policy were "specific, clear, unambiguous and positive," that plaintiff was the fee simple owner of the property. The South British policy provided that it should be void "if the interest of the insured in the property be not truly stated herein," but neither in this policy nor in any of the other three is there any statement concerning the title by which insured holds, or reference to his title, save the condition that if it is less than fee simple the policies shall be void, *unless the quantum of his title is stated in writing added thereto*. We think this falls far short of a clear and positive statement that insured did hold the property by a fee simple title. As a matter of fact there was here no representation at all. Furthermore, the insurers prepared and tendered the policies. One sent an inspector to pass upon the risk and the record justifies the inference that the other companies relied upon his report. They know that many buildings stand on land which is leased or to which the owners of the buildings do not have fee simple title. They must be held to know that their policy forms as approved by the state department provide, not that a policy written on a building

standing on ground to which the owner has not fee simple title shall be void ipso facto, but only that it shall be void if not held by such title, and a rider so stating is not attached to the policy. There is no showing that in such case a higher premium is charged; but even if it were so shown, since it is the insurer, not the insured, who determines the proper premium and prepares the contract, we think it the duty of the insurer to prepare and tender for the premium it exacts a policy which has enough riders on it to make it a valid policy when the admittedly existing facts, as in this case, permit the issuance of a valid policy on the subject of insurance *at the time the policy is issued.* To hold otherwise would be tantamount to approval of the insurer using dice that always come up seven while requiring the insured to use dice that may come up seven and may not.

The defendants say in their brief: "A waiver is an intentional relinquishment of a known right, and is a voluntary act." We accept the definition as correct. But what is the right here involved, which if not waived avoids the policies? Defendants' contention seems to be that it was their right to have the subject of insurance, plaintiff's hotel, standing on land owned in fee simple by him when they issued the policies, because "it was so nominated in the bond." By the wording used a distinction is recognized between the subject of insurance, in this case a building, which it was possible to destroy by fire, and the land itself upon which it stood, which is not susceptible to destruction by fire. The physical and natural hazard of the loss of a building by fire is of course no greater when the land is owned by one person and the building by another than where both are owned by the same individual. A building on land owned by fee simple title and one on land held by a leasehold or other lesser title are not like kerosene and gasoline, the latter more inflammable than the former. We will not assume that the provision of the policies

here involved was inserted as an arbitrary whim of the companies without relevancy to the risk.

 The authorities cited by defendants point out that there is a greater moral hazard in carrying a policy on a building owned by one party which is located on land belonging to another because of the greater temptation to the owner of a building to burn it, and perhaps the temptation of the owner of the land to burn the building in leiu of an action in ejectment against the owner of the building to secure possession of the land. A bad moral risk is a matter against which one contracting with another has a right to protect himself. This was defendants' right, a known right, because they provided for written waiver of it, and if they intentionally relinquished the right and collected the premiums, whether they endorsed such relinquishment upon the policies in writing or not, they cannot now assert as a defense what they intentionally relinquished.

A person's intention ordinarily can be proved only by circumstantial evidence. The fact that here the insurers did not inquire of plaintiff concerning a matter which, under their present contention, they knew vitally affected the validity of their policies, is conduct that requires an inference that they deemed knowledge by them of the state of the title immaterial to an approval of the risk; that they had otherwise satisfied themselves as to the condition of title; or, being in a position to furnish plaintiff a valid policy, that they were willing to write him a void policy and take his money for protection that they now say they did not give him. On the defendants' own definition of waiver, as applied to the facts of this case, they waived the provision upon which they now rely to defeat recovery when they issued the policies.

It should be noted that this is not a case where the condition of the title or plaintiff's interest in the property changed after the policies were written. Such a matter could not be known or predicted in advance of

its occurrence. For this reason we think cases, some of which are cited, dealing with such a situation are not in point.

The cases before us, in principle, differ in no essential respect from the case of *German Co. v. Herbertson*, 49 Colo. 217, 112 Pac. 690. The building there involved was on leased ground and it was not so stated in the policy. The clause upon which reliance was placed to defeat recovery was identical with the one involved in the instant cases. No inquiries were made by the agents concerning title and the insured made no statements concerning it. What was said by the court in that case is peculiarly applicable here: "The agents did not appear to attach any materiality to the question of title to the ground and the plaintiffs remained in ignorance of any such materiality. The policy seems to have been issued, received and paid for, in good faith, for the purpose of indemnifying the plaintiffs against loss of their building and merchandise by fire. Under all these circumstances, the law imputes to the company a knowledge of the condition of the title to the ground, and it waived the aforesaid provision in its policy issued with such knowledge. Such a conclusion is the only one consonant with correct business methods and is supported by the weight of authority." In support of this pronouncement are cited eleven cases from other jurisdictions. To these we add the following which, without analyzing each case in detail, in our opinion, support the the rule announced and the one to which we herein adhere. *Sam Wong v. Stuyvesant Ins. Co.*, 100 Cal. App. 109, 279 Pac. 1050; *Golden Gate Motor Transport Co. v. Great American Indemnity Co.*, 6 Cal. (2d) 439, 58 P. (2d) 374.

■ We are not unmindful of the fact that there are cases that support defendants' contention — some of which they cite in their brief. One such, on which they strongly rely, is *Syndicate Ins. Co. v. Bohn*, 65 Fed. 165, reversing the Supreme Court of Nebraska which first passed upon the case, its opinion being reported under

the title of *Hanover Fire Ins. Co. v. Bohn,* in 48 Neb. 743, 67 N.W. 774, 58 A.S.R. 719. This Nebraska decision is cited as one of the authorities for our holding in *German Co. v. Herbertson, supra.* Neither are we unmindful of the fact that in some of the jurisdictions from which cases are cited in support of *German Co. v. Herbertson, supra,* there seems to have been some departure from the rule to which formerly there was an adherence. Among these are *Wierengo v. American Fire Ins. Co.,* 98 Mich. 621, 57 N.W. 833, and *Wyandotte Brewing Co. v. Hartford Fire-Ins. Co.,* 144 Mich. 440, 108 N. W. 393, 6 L.R.A. (N.S.) 852. Even if such be the fact we think the rule announced in *German Co. v. Herbertson, supra,* is sound and we are not disposed to change it. The law as it is in this state, and as we think it should be, is well expressed by the California Court of Appeals in *Sam·Wong v. Stuyvesant Ins. Co., supra,* in the following language: "Prior to the adoption of the standard form of policy in this state it was held that where the assured had an insurable interest in property, and without fraud, in good faith applied for insurance upon the same, and made no actual misrepresentation or concealment of his interest therein, and the insurance company made no inquiry concerning his interest, and issued a policy to him, and accepted and retained the premium, the company must have been presumed to have knowledge of the condition of the title, and to have assured the property with such knowledge. (*Raulet v. Northwestern, etc., Ins. Co.,* 157 Cal. 213-228 [107 Pac. 292]; 14 R.C.L., pp. 926-932.) After the adoption of the standard form of policy, the law of waiver and estoppel remained the same as before upon this subject. (*Kavanaugh v. Franklin Fire Ins. Co.,* 185 Cal. 307, 315 [197 Pac. 99]; 14 R.C.L., p. 932.)"

The judgment of the district court is reversed and the cause remanded for further proceedings consistent with the views herein expressed.

MR. JUSTICE KNOUS not participating.