**DEPARTMENT OF HEALTH, State of Colorado, Petitioner,**

v.

**Mamie DONAHUE and State Personnel Board, Respondent.**

**No. 83SC91.**

Supreme Court of Colorado,
En Banc.

Nov. 13, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Anthony Marquez, Asst. Atty. Gen., Denver, for petitioner.

James R. Gilsdorf, Denver, for respondent.

QUINN, Justice:

We granted certiorari to review the decision of the court of appeals in *Department of Health v. Donahue*, 668 P.2d 946 (Colo. App.1982), which held that Mamie Donahue, who was discharged as a probationary employee of the Department of Health without being accorded a predisciplinary meeting with her supervisor as provided by Personnel Rule 7–3–1, 4 C.C.R. 801–1 at 80 (1977), was entitled to reinstatement to her position with full back pay for the period of her discharge. We reverse the judgment.

## I.

On May 23, 1977, Donahue was appointed on a probationary status to the position of Migrant Health Program Director in the Colorado Department of Health (department). Donahue's supervisor became dissatisfied with various aspects of Donahue's job performance, and on February 10, 1978, wrote Donahue a letter listing various deficiencies in her performance as director of the migrant health program and advising her of the necessity to take corrective action. On April 20, 1978, Donahue's supervisor met with her and handed her a signed letter of dismissal, effective May 5, 1978, because of unsatisfactory performance in various aspects of her employment duties, all of which were outlined in specific detail. Donahue, believing that the signed letter indicated a final decision on her discharge had been made, did not discuss the contents of the letter with her supervisor.

Donahue filed a timely appeal of her discharge with the State Personnel Board (board), alleging unlawful discrimination by the department.[1] The board, pursuant to rule, referred the complaint to the Colorado Civil Rights Commission for investigation.[2] On June 13, 1979, an investigator for the

1. Personnel Rule 7–6–2, 4 C.C.R. 801–1 at 81–82 (1977), provides as follows:

    Any person desiring to appeal a disciplinary action shall, within the ten calendar days of receipt of notice of the action taken, file a written petition with the Board. The ten-day period may not be extended, except in exceptional cases for good cause shown. If the employee fails to petition the Board within ten days or within the time as extended for good cause shown, the action of the appointing authority shall be final and not reviewable.

2. Personnel Rule 1–6–2, 4 C.C.R. 801–1 at 7–9 (1977), which was in effect at the time of Donahue's discharge, set forth the following procedures for grievances involving alleged discrimination:

    (A) When a grievance or appeal is filed under the Personnel System alleging discrimination based on race, creed, color, sex, marital status, age, national origin or ancestry, in employment or training programs in the Personnel System, under the jurisdiction of the Board and the State Personnel Department, the following procedural steps shall be taken:
    (1) After a grievance or appeal is filed ... the State Personnel Department ... shall direct the complainant to go within ten days to an office of the Colorado Civil Rights Commission (hereinafter "Commission") to file a complaint.

    *    *    *    *    *    *

    (3) The Commission shall assign the case to a Civil Rights Specialist to be investigated under regular Commission investigative procedures and powers, including discovery and subpoenas available under both the Commission and the Personnel System statutes and procedures.

    *    *    *    *    *    *

    (5) Upon completion of an investigation conducted pursuant to this article, the investigator shall prepare an opinion of probable cause or no probable cause to believe that discrimination occurred....

    *    *    *    *    *    *

    (C) In the case of an appeal involving an allegation of discrimination, the complainant shall raise the issue of discrimination in the notice of appeal if such issue has not been raised earlier. The Director or the Board shall hold the usual procedures for processing an appeal in abeyance pending issuance of the opinion of the investigator. If the opinion of the investigator when issued is of probable cause, the Director or the Board shall assign the case for a settlement conference between the parties and a Commission conciliator....

Civil Rights Commission issued an opinion of probable cause to believe that the department had unlawfully discriminated against Donahue on the basis of race or national ancestry. Following unsuccessful conciliation efforts between the department and Donahue, the matter was referred to the board for a hearing in October 1979.

On January 16, 1980, in compliance with the hearing officer's order for the filing of prehearing statements, Donahue submitted a statement listing the issues to be determined at the hearing. In addition to her discrimination claim, Donahue raised the claim that she had been denied a predisciplinary meeting as required by Personnel Rule 7–3–1, 4 C.C.R. 801–1 at 80 (1977), which was in effect at the time of Donahue's dismissal and provided as follows:

> *Appointing Authority To Meet With Employee Involved.* When information received by the appointing authority indicates the possible need to administer disciplinary action, he shall meet with the employee involved, present the information that has come to his attention, and give the employee an opportunity to admit or present information regarding mitigating circumstances.
>
> (A) It is not intended that this meeting constitute a formal hearing but only an opportunity for parties to meet and exchange information. Formal hearings to consider disciplinary actions are provided for in Chapter 8 of these Rules.
>
> (B) If the employee wishes, he may submit a written explanatory statement to the appointing authority which shall be attached to and kept with each copy of the disciplinary action.

An evidentiary hearing was conducted in April 1980, and on July 17, 1980, the hear-

ing officer made findings that "Donahue's race and heritage [were factors] motivating her discharge," and that the department had denied her a meaningful predisciplinary meeting as required by Rule 7–3–1. Concluding that Donahue was wrongfully discharged, the hearing officer ordered Donahue's reinstatement with full back pay during the period of her discharge, with appropriate deductions for "any income received by her during that period for substitute employment or as unemployment compensation." The department appealed the hearing officer's decision to the board. The board reversed the hearing officer's finding of discrimination, but affirmed the finding of improper discharge due to the denial of a predisciplinary meeting and approved the order of reinstatement with full back pay during the period of discharge, reduced by substitute income or unemployment compensation.

Donahue did not challenge the board's reversal of the hearing officer's decision on discrimination.[3] The department, however, pursuant to section 24–4–106, 10 C.R.S. (1982), filed a petition for judicial review in the district court on the ground that the board erred in ordering reinstatement with full back pay due to the failure of Donahue's supervisor to provide her with a predisciplinary meeting. The district court ruled, in pertinent part, that Donahue was entitled to a predisciplinary meeting, and that the meeting with her supervisor on April 20, 1978, did not qualify as such a meeting; that Donahue timely raised the denial of the predisciplinary meeting before the hearing officer; and that the board's order of reinstatement with full back pay was appropriate.

The department appealed to the court of appeals, which affirmed the judgment of the district court.[4] The court of appeals

---

If the settlement conference is unsuccessful, except as modified herein, the usual appeal procedures shall continue, during the course of which, the opinion of the investigator shall be made available and the investigator may be called as a witness by either party. . . .

**3.** Because Donahue did not seek judicial review of the board's finding of no discrimination, the

board's determination is final as to that aspect of her dismissal.

**4.** The department initially claimed that the April 20, 1978, meeting with Donahue was sufficient to comply with Personnel Rule 7–3–1. Following an adverse ruling on this issue by the district court, the department abandoned its position on this issue.

held that Donahue's claim that she was deprived of a predisciplinary meeting was timely, because it was brought to the attention of the department prior to the evidentiary hearing conducted by the hearing officer. The court of appeals also held that, since Donahue's claim of wrongful discharge as the result of the deprivation of a predisciplinary meeting was timely, she was entitled to reinstatement with full back pay during the period of her discharge. We granted certiorari to consider two issues: whether the court of appeals erred in holding that Donahue's claim of wrongful discharge for lack of a predisciplinary meeting with her supervisor was timely raised; and, if so, whether the award of reinstatement with full back pay during the period of discharge is an appropriate remedy to redress the denial of a predisciplinary meeting to a probationary employee prior to discharge.

## II.

The department argues that Donahue's failure to raise the denial of a predisciplinary meeting until approximately twenty months after her discharge constitutes a failure to minimize the avoidable consequences of her discharge and, as we interpret the department's argument, bars Donahue's claim for full back pay on grounds of waiver or estoppel. We are unpersuaded by the department's argument.

## A.

■ Waiver is the intentional relinquishment of a known right or privilege. *E.g.,* *Millage v. Spahn,* 115 Colo. 444, 175 P.2d 982 (1946); *Gulf Insurance Co. v. State,* 43 Colo.App. 360, 607 P.2d 1016 (1979). A waiver may be explicit, as when a party orally or in writing abandons an existing right or privilege; or it may be implied, as, for example, when a party engages in conduct which manifests an intent to relinquish the right or privilege, or acts inconsistently with its assertion. *See People v. Abbott,* 638 P.2d 781 (Colo.1982); *Underhill v. Detert,* 152 Colo. 223, 381 P.2d 265 (1963); *Johnson v. Neel,* 123 Colo. 377, 229

P.2d 939 (1951); *People ex rel. Metzger v. Watrous,* 121 Colo. 282, 215 P.2d 344 (1950). Although an intent to waive a benefit may be implied by conduct, the conduct itself should be free from ambiguity and clearly manifest the intention not to assert the benefit. *See Ewing v. Colorado Farm Mutual Casualty Co.,* 133 Colo. 447, 296 P.2d 1040 (1956); *French v. Patriotic Insurance Company of America,* 107 Colo. 275, 111 P.2d 893 (1941).

■ In this case Donahue's failure to raise the denial of the predisciplinary meeting at the time she initially appealed her dismissal was not the type of unequivocal act indicative of a waiver. The primary basis of Donahue's initial appeal to the board was her claim of discrimination. When that claim was referred to the Civil Rights Commission, there was approximately a seventeen month delay before the discrimination claim was referred back to the board. Donahue shortly thereafter informed the department and the board that she was asserting the denial of the predisciplinary meeting as an additional basis for reinstatement and back pay. We conclude that Donahue's delay in raising this claim was occasioned primarily by the investigative and conciliatory efforts exerted by the Civil Rights Commission and was not the type of conduct that clearly manifested any intent by Donahue to relinquish her claim to reinstatement based on the department's alleged violation of Personnel Rule 7–3–1.

## B.

■ Nor did Donahue's delay in asserting her Rule 7–3–1 claim constitute an estoppel. There are four basic elements to an estoppel: the party to be estopped must know the facts; this party also must intend that her conduct be acted on or must so act that the party asserting the estoppel has a right to believe the other party's conduct is so intended; the party asserting the estoppel must be ignorant of the true facts; and the party asserting the estoppel must rely on the other party's conduct to its injury. *E.g., City and County of Denver v. Bergland,* 695 F.2d 465 (10th Cir.1983); *Aubert*

v. Fruita, 192 Colo. 372, 559 P.2d 232 (1977); Jacobs v. Perry, 135 Colo. 550, 313 P.2d 1008 (1957); Langley v. Young, 72 Colo. 466, 211 P. 640 (1923); Griffith v. Wright, 6 Colo. 248 (1882). Although Donahue was aware that she had been denied the type of predisciplinary meeting contemplated by Rule 7–3–1, there is no evidence indicating that her failure to raise this claim was intended, or reasonably believed by the department to be intended, to mislead or jeopardize the department's litigation position before the board. On the contrary, as noted previously, the primary causes of the delay were the investigative and conciliatory efforts exerted by the Civil Rights Commission in connection with Donahue's claim of discrimination. Moreover, the department was aware, or certainly should have been aware, of the true facts underlying Donahue's meeting with her supervisor on April 20, 1978. Finally, the Department was given full notice of the precise nature of Donahue's claim in January 1980, approximately three months prior to the commencement of the administrative hearing before the hearing officer. These circumstances, in short, fail to satisfy the essential elements of an estoppel defense. We turn then to the effect of the denial of a predisciplinary meeting on Donahue's claim for reinstatement with full back pay during the period of her discharge.

### III.

The department contends that the denial of a predisciplinary meeting does not justify an award of back pay during the period of discharge, because Donahue was a probationary employee and, as such, she could have been dismissed at any time as long as her dismissal was not predicated on some impermissible reason, such as, for example, race, color, national origin, creed, gender, or political affiliation. We agree with the department's argument.

### A.

Under the Colorado Constitution probationary employees have no right to an appeal as a result of a dismissal for unsatisfactory performance. Article XII, section 13(10) of the Colorado Constitution states as follows:

> The state personnel board shall establish probationary periods for all persons initially appointed, but not to exceed twelve months for any class or position. After satisfactory completion of any such period, the person shall be certified to such class or position within the personnel system, but unsatisfactory performance shall be grounds for dismissal by the appointing authority during such period without right of appeal.

See also § 24–50–115(6), 10 C.R.S. (1982 & 1984 Supp.) ("unsatisfactory performance shall be grounds for dismissal by the appointing authority during such [probationary] period without right of appeal"); § 24–50–125(5), 10 C.R.S. (1982 & 1984 Supp.) (probationary employee has no right to a review hearing on dismissal for unsatisfactory job performance). A certified employee, in contrast, does have a right to a review hearing upon dismissal. Article XII, section 13(8) of the Colorado Constitution states in pertinent part:

> A person certified to any class or position in the personnel system may be dismissed, suspended, or otherwise disciplined by the appointing authority upon written findings of failure to comply with standards of efficient service or competence, or for willful misconduct, willful failure or inability to perform his duties, or final conviction of a felony or any other offense which involves moral turpitude, or written charges thereof may be filed by any person with the appointing authority, which shall be promptly determined. Any action of the appointing authority taken under this subsection shall be subject to appeal to the state personnel board, with the right to be heard thereby in person or by counsel, or both.

See also § 24–50–125, 10 C.R.S. (1982 & 1984 Supp.) (certified employee has right to petition the board for a hearing on disciplinary action imposed by appointing authority).

■ A probationary employee lacks a legally protected interest in continued employment sufficient to create an entitlement to a due process hearing prior to discharge, at least in the absence of a showing that the dismissal has been exacted as a penalty for the exercise of the employee's constitutionally protected rights of speech or association, or that the charges are such as to seriously damage the employee's standing and association in the community or to create a stigma or other disability that abridges the freedom to take advantage of other employment opportunities. *See Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). No such claim of constitutional entitlement is before us on this appeal. In the absence of any applicable statute or regulation, therefore, the department's action in this case would have been proper.

■ When the state, however, promulgates a regulation that imposes on governmental departments more stringent standards than are constitutionally required, due process of law requires those departments to adhere to those standards in discharging employees. *Perry*, 408 U.S. 593, 92 S.Ct. 2694; *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Mazaleski v. Treusdell*, 562 F.2d 701 (D.C.Cir.1977); *Shumate v. State Personnel Board*, 34 Colo.App. 393, 528 P.2d 404 (1974). Personnel Rule 7–3–1 is such a standard. Nothing in the rule limits the predisciplinary meeting to certified employees only, and we decline to read such a limitation into it.[5] Probationary employees such as Donahue, no less than certified employees, were entitled to rely on the plain meaning of the rule in the absence of any notice to the contrary. Personnel Rule 7–3–1 thus granted Donahue the right to an appropriate predisciplinary meeting with her supervisor before being discharged for unsatisfactory job performance prior to the expiration of her probationary period. Since the department failed to accord Donahue this predisciplinary meeting, her early discharge on May 5, 1980, two and one-half weeks before the expiration of her one-year probationary term, was in violation of her procedural due process rights.

B.

Having determined that Donahue's right to a predisciplinary meeting was violated, we must now address the appropriate remedy to redress this wrong. The propriety of any remedy must be evaluated in light of Donahue's status as a probationary employee. Article XII, section 13(10) of the Colorado Constitution and its statutory counterparts, §§ 24–50–115(6) and –125(5), 10 C.R.S. (1982 & 1984 Supp.), grant the appointing authority the discretion to discharge a probationary employee for unsatisfactory job performance at any time during the one-year probationary period. The board in this case expressly rejected the hearing officer's findings on discrimination—an issue which Donahue elected not to challenge on judicial review and which is therefore binding on us—and ordered Donahue's reinstatement solely on the basis of the procedural error occasioned by the failure of the department to provide her with an adequate predisciplinary meeting with her supervisor. We are thus confronted with a situation involving a probationary employee who, but for the procedural flaw underlying her discharge, could have been terminated at the conclusion of the probationary one-year period for the same reason that formed the basis of her earlier discharge—that is, unsatisfactory job performance. Colo. Const. art. XII, § 13(10); § 24–50–115(6), 10 C.R.S. (1982 &

---

**5.** Personnel Rule 5–5–1(E)(1), 4 C.C.R. 801–1 at 58 (1982), which became effective on December 1, 1979, states in relevant part:

(E) Probationary employees are entitled to all rights, benefits, and privileges granted by the Rules to certified employees, except probationary employees:

(1) Must be granted an informal meeting as prescribed in Rule 7–3–1 if their job performance is unsatisfactory, but do not have the right of a hearing to review their dismissal . . . .

1984 Supp.). Any remedy fashioned in this case should equal, to the extent practicable, the wrong actually sustained by Donahue. That wrong was the department's failure to provide her with a predisciplinary meeting with her supervisor prior to her discharge on May 5, 1978, seventeen days before the expiration of her probationary term on May 22, 1978. The appropriate remedy, under these circumstances, should do no more than place Donahue in the same situation she would have occupied if her right to a predisciplinary meeting had not been violated.

 Where a legal injury is of an economic character, as here, legal redress in the form of compensation should be equal to the injury. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975); *Burton v. Cascade School District,* 512 F.2d 850 (9th Cir.1975). In ordering Donahue's reinstatement with full back pay during the period of her discharge, the court of appeals granted Donahue, in effect, a status tantamount to that of a certified employee, with a corresponding entitlement to continued employment far beyond the one-year probationary term. This remedy bestows on Donahue an economic windfall vastly disproportionate to the legal wrong sustained by her, and we accordingly disapprove it. *See County of Monroe v. United States Department of Labor,* 690 F.2d 1359 (11th Cir.1982); *City of Boston v. Secretary of Labor,* 631 F.2d 156 (1st Cir. 1980); *Kendall v. Board of Education of Memphis City,* 627 F.2d 1 (6th Cir.1980); *see also deKoevend v. Board of Education,* 688 P.2d 219 (Colo.1984).

 The proper remedy, in our view, is to award Donahue back pay for the unexpired period of her probationary term, which extended from May 5 to May 22, 1978, with an offset for any substitute earnings or unemployment compensation received by her during this period of time. From an economic standpoint, this remedy restores Donahue to the position she would have been in if the flawed predisciplinary meeting had never occurred and she had simply been dismissed at the conclusion of her probationary term for the same reason that occasioned her discharge in this case, unsatisfactory job performance.

The judgment is reversed and the cause is remanded to the court of appeals with directions to return the case to the board for the entry of an appropriate order consistent with the views herein expressed.