22CA1437 Peo v Savala 04-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1437
City and County of Denver District Court No. 20CR1312
Honorable Kandace C. Gerdes, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Albert A. Savala,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE TOW
Dunn and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

---

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrew C. Heher, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Albert A. Savala, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree assault - reckless.  We affirm.

## I.    Background

¶ 2    At trial, the jury heard evidence that would support the following findings.

¶ 3    Savala and Angela Marquez were involved in an intimate relationship.  Toward the end of their relationship, Savala went to Marquez's house to retrieve tools he had loaned to her.  While there, Marquez asked Savala to put together a shoe rack, but Savala refused.  Savala began to leave the house, but before he reached the front door, Marquez struck him in the head with a plank of wood.  Savala then swung at Marquez while holding a nail gun and struck her multiple times in the face and torso.

¶ 4    Savala left the house in his truck and returned a few minutes later.  He parked his car across the street from Marquez's home, exited his vehicle, and was promptly arrested by police on the scene.  Before being handcuffed, Savala told the officers that "[Marquez] hit [him] first."  Marquez was taken to the hospital, where she was treated for severe facial trauma, a rib fracture, a

1

hand fracture, bruising of her abdomen and chest, and internal damage to her liver. Marquez was released from the hospital approximately two months after the incident.

¶ 5    The prosecution charged Savala with first degree assault and later added a charge of attempted first degree murder as a crime of violence. A jury acquitted Savala of attempted first degree murder and first degree assault but found him guilty of the lesser included offense of second degree assault - reckless. The jury further found that Savala acted upon a provoked and sudden heat of passion.

## II.    Jury Instruction

¶ 6    Savala argues that the trial court incorrectly instructed the jury regarding self-defense as a traverse to the crime of reckless second degree assault by including language applicable to the use of deadly force rather than non-deadly force. We discern no reversible error.

### A.    Additional Background

¶ 7    During the jury instruction conference, the trial court read the opening line of each instruction and gave the prosecution and defense counsel an opportunity to object to the instruction.

¶ 8     The trial court included two self-defense instructions. Jury Instruction No. 15 (Instruction 15) addressed the affirmative defense of defense of person as it related to the charges for attempted first degree murder and assault in the first degree. Jury Instruction No. 16 (Instruction 16) addressed self-defense as a traverse to negate the reckless mens rea required for second degree assault. When it reached Instruction 16, the court described it as "the instruction as to self-defense for assault in the second degree." The court explained that, while it did not know if the defense wanted that instruction, the court had added it to the proposed packet because it was "different [from Instruction 15] because it [is] not the affirmative defense based upon the mental state of recklessly." Defense counsel requested the instruction be included.

## B.     Waiver or Forfeiture

¶ 9     We first address the People's contention that Savala waived his right to challenge Instruction 16.

### 1.     Standard of Review and Applicable Law

¶ 10    We will not review a trial court's jury instruction where a defendant waived any challenge to it. *People v. Rediger*, 2018 CO 32, ¶ 40. "Waiver . . . is 'the intentional relinquishment of a known

3

right or privilege,'" *id.* at ¶ 39 (quoting *Dep't of Health v. Donahue,* 690 P.2d 243, 247 (Colo. 1984)), whereas forfeiture is "the failure to make the timely assertion of a right," *id.* at ¶ 40 (quoting *United States v. Olano,* 507 U.S. 725, 733 (1993)). The former is accomplished by an intentional act, while the latter is the product of neglect. *Id.* "This distinction is important because a waiver extinguishes error, and therefore appellate review, but a forfeiture does not." *Id.* A forfeiture is reviewed for plain error. *People v. Garcia,* 28 P.3d 340, 344 (Colo. 2001).

### 2. Analysis

¶ 11　　The People contend that because "the court addressed each instruction individually, and defense counsel unequivocally expressed his approval of Instruction 16," defense counsel intentionally waived Savala's right to have the jury instructed on non-deadly physical force self-defense. But a waiver requires a clear manifestation of intent to waive a known right. *Rediger,* ¶¶ 39, 42. In *Rediger,* the supreme court acknowledged that a waiver, whether express or implied, could exist where the record contains evidence that the defendant "considered objecting to the erroneous instruction but then, 'for some tactical or other reason,

4

rejected the idea.'" *Id.* at ¶ 42 (quoting *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997)). Alternatively, evidence that defense counsel knew of the discrepancy in the jury instructions and acquiesced nonetheless also suggests a waiver. *Id.* at ¶ 43.

¶ 12    Here, the record reveals no evidence that Savala's counsel intentionally accepted Instruction 16 knowing that it conflated the standards for deadly and non-deadly physical force self-defense. Nor do we perceive any tactical advantage in doing so.

¶ 13    We also acknowledge that, unlike the defense attorney in *Rediger*, Savala's attorney was not asked to approve the jury instructions as a package but, instead, was presented each instruction one by one. *See id.* at ¶ 42 (finding a defendant forfeits, rather than waives, his right to proper jury instruction where defense counsel "generally acquiesced to the jury instructions"). But the record reflects that the court added Instruction 16 to the instruction packet, the court only briefly and generally described the instruction but did not read it aloud, and counsel asked to have the instruction included. There is no indication in the record that counsel had the opportunity to review the court-drafted instruction closely enough to identify the problematic language.

¶ 14     Finally, the People argue that "defense counsel's active participation in the crafting of the instructions" suggests a waiver. Here, the trial court drafted all the jury instructions before the conference and acknowledged that it included Instruction 16 of its own volition before asking if defense counsel wanted to keep it in the packet. Although the parties modified the language of some instructions, there is no record evidence that Savala "drafted, tendered, or requested" Instruction 16 to include the deadly force self-defense standard. *See People v. Smith*, 2018 CO 33, ¶ 16.

¶ 15     We thus conclude that Savala did not waive his appellate claim that the trial court erroneously instructed the jury.

### C.     Instruction 16 was not Plainly Erroneous

#### 1.     Standard of Review and Applicable Law

¶ 16     "Trial courts have a duty to instruct the jury on all matters of law applicable to the case." *Roberts v. People*, 2017 CO 76, ¶ 18. "We review jury instructions de novo to determine whether the instructions accurately informed the jury of the governing law." *Id.* "We consider all of the instructions given by the trial court together to determine whether they properly advised the jury." *People v. DeGreat*, 2018 CO 83, ¶ 15.

¶ 17    "If a defendant lodges no objection to a trial court's jury instruction, a plain error standard should be applied in reviewing the instruction." *Garcia*, 28 P.3d at 344. Plain error exists where an error is (1) obvious and (2) substantial. *Hagos v. People*, 2012 CO 63, ¶ 14. An error is obvious when it "contravene[s] a clear statutory command, a well-settled legal principle, or established Colorado case law." *People v. Crabtree*, 2024 CO 40M, ¶ 42. An error is substantial when it "so undermine[s] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Hoggard v. People*, 2020 CO 54, ¶ 13 (quoting *People v. Weinreich*, 119 P.3d 1073, 1078 (Colo. 2005)). "[W]ith respect to jury instructions, reversal under a plain error standard requires a defendant to 'demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction.'" *Garcia*, 28 P.3d at 344 (citation omitted).

¶ 18    The Colorado criminal code differentiates between deadly and non-deadly physical force in defense of person. *See* § 18-1-704(1), (2)(a)-(c), C.R.S. 2024 (distinguishing the application of "physical force" from "deadly physical force" for

7

self-defense purposes). "'Deadly physical force' means force, the intended, natural, and probable consequence of which is to produce death, and which does, in fact, produce death." § 18-1-901(3)(d), C.R.S. 2024.

¶ 19     The model jury instructions address each type of force separately: one instruction is entitled "Use of Deadly Physical Force (Defense of Person)," COLJI-Crim. H:12 (2024), while the other is entitled "Use of Non-Deadly Physical Force (Defense of Person – Offense with a Mens Rea of Recklessness, Extreme Indifference, or Criminal Negligence)," COLJI-Crim. H:13 (2024). (We will call the former the pattern deadly force instruction and the latter the pattern non-deadly force instruction.)

¶ 20     A side-by-side comparison demonstrates that these pattern instructions are similar but not identical.

| Pattern Deadly Force Instruction | Pattern Non-Deadly Force Instruction |
| --- | --- |
| "The defendant was" | "A person is" |
| "legally authorized" | "justified" |
| "to use deadly physical force upon another person" | "in using physical force upon another person" |
| "without first retreating" | "without first retreating" |
| "if [they] use that deadly physical force in order to defend [themself or a third person] from what [they] reasonably believed | "in order to defend [themself or a third person] from what [they] reasonably believe[] to be the use or imminent use of unlawful |

| Pattern Deadly Force Instruction | Pattern Non-Deadly Force Instruction |
|---|---|
| to be the use or imminent use of unlawful physical force by that other person, and" | physical force by that other person, and" |
| "[they] reasonably believed a lesser degree of force was inadequate, and" | "[they] may use a degree of force which [they] reasonably believe[] to be necessary for that purpose." |
| "[they] had a reasonable ground to believe, and did believe, that [they] or another person was in imminent danger of being killed or of receiving great bodily injury." | |

### 2. The Erroneous Instruction

¶ 21    As submitted to the jury, Instruction 16 read as follows:

> A person is justified in using physical force
> upon another person without first retreating in
> order to defend himself or a third person from
> what he reasonably believes to be the use or
> imminent use of unlawful physical force by
> that other person and he reasonably believes a
> lesser degree of force was inadequate, and he
> had a reasonable ground to believe, and did
> believe, that he or another person was in
> imminent danger of being killed or receiving
> great bodily injury.

The instruction began with the language of the pattern non-deadly

force instruction but ended with the language from the pattern

deadly force instruction.  Specifically, it incorporated the

inapplicable requirement that Savala believed that he or another

9

person was in imminent danger of being killed or receiving great bodily injury.[1]

¶ 22     Including this requirement misstated the law.  In order for the use of non-deadly force to be justified, Savala need not fear death or great bodily injury; rather, he merely must reasonably believe that unlawful force is being used or about to be used against him. COLJI-Crim. H:13.

¶ 23     Because the instruction incorrectly stated the law, it was error.

     3.     The Trial Court's Error Did Not Prejudice Savala

¶ 24     Nevertheless, we conclude that reversal is not required because the error was not plain.  In particular, in light of the weight of the evidence, we cannot say that the error was substantial.

¶ 25     Initially, we note that there is at least some evidence from which the jury could have inferred Savala did, in fact, fear great bodily injury.  Savala testified that Marquez was holding a wood

---

[1] Savala does not argue that there is any substantive difference between the phrase "reasonably believed a lesser degree of force was inadequate," COLJI-Crim. H:12 (2024), and "use[d] a degree of force which [they] reasonably believe[d] to be necessary," COLJI-Crim. H:13 (2024).

10

two-by-four like a bat and struck him in the temple with the butt of the board, causing him to bleed profusely. Thus, even though inapplicable, the evidence could have supported a finding in Savala's favor.

¶ 26 More importantly, however, under any definition of self-defense, Savala was required to act with a reasonable amount of force. Instead, the evidence presented at trial established that Savala responded to Marquez's physical attack by beating her repeatedly with a nail gun. His barrage split open Marquez's head, exposing her scalp; broke her nose, tearing part of it off her face; broke her clavicle, her rib, and her hand; and lacerated her liver, causing her to be hospitalized for two months. The evidence overwhelmingly demonstrates that Savala attacked Marquez with such an unreasonable degree of force that his actions went well beyond self-defense.

¶ 27 Moreover, the prosecutor did not focus on the erroneous language in the instruction and did not argue that Savala needed to fear great bodily injury or death. Instead, the prosecutor argued that "whatever threat he thought he was facing . . . his response

was not appropriate because he used way more force that what was necessary. . . . It wasn't reasonable."

¶ 28 In light of the focus of the prosecution's argument and the overwhelming nature of the evidence, we conclude that the error does not call into doubt the reliability of the judgment of conviction. *Hoggard*, ¶ 13; *see also People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) ("[A]n erroneous jury instruction does not normally constitute plain error . . . where the record contains overwhelming evidence of the defendant's guilt.").

¶ 29 Because the error was not substantial, and therefore not plain, there is no basis for reversal.

### III. Sufficiency of the Evidence

¶ 30 Savala next argues that the evidence was insufficient to sustain the jury's verdict that he did not act reasonably in self-defense. We disagree.

### A. Standard of Review and Applicable Law

¶ 31 When considering a challenge to the sufficiency of the evidence underlying the conviction, "[w]e review the record de novo to determine whether the evidence presented was sufficient in both quantity and quality to sustain a defendant's conviction." *McCoy v.*

*People*, 2019 CO 44, ¶ 63. We view the evidence in the light most favorable to the prosecution to determine whether the evidence was "sufficient to support the conclusion by a reasonable mind that the defendant was guilty beyond a reasonable doubt." *People v. Griego*, 2018 CO 5, ¶ 24. "If there is evidence upon which the jury may reasonably infer an element of the crime, the evidence is sufficient to sustain that element." *People v. Phillips*, 219 P.3d 798, 800 (Colo. App. 2009).

## B. Analysis

¶ 32 Relying on *Sanchez v. People*, Savala argues that his actions were those of "a reasonable person suddenly and unexpectedly confronted with potentially deadly and gravely injurious conduct." 820 P.2d 1103, 1110 (Colo. 1991). Savala contends that this, in combination with the jury's heat of passion finding, "underscore[s] that the prosecution failed to disprove self-defense beyond a reasonable doubt."[2]

---

[2] Savala acknowledges, and we agree, that "the heat of passion finding does not touch on the reckless mens rea," which is a necessary element in proving second degree assault.

¶ 33    We reject this argument because, as we noted in the context of whether the instructional error was prejudicial, the jury heard ample evidence from which it could conclude the prosecution proved beyond a reasonable doubt that Savala's response went well beyond the confines of "reasonable." The jury heard the accounts of what happened, heard the medical testimony, and saw photographs of Marquez's extensive injuries. Notably, even defense counsel's closing argument focused heavily on whether "Savala took it too far, and . . . [whether] the injuries he caused to . . . Marquez were too serious." The evidence that Savala did, indeed, take it too far is not only sufficient, it is overwhelming.

## IV.    Disposition

¶ 34    The judgment is affirmed.

JUDGE DUNN and JUDGE MEIRINK concur.