25CA0398 Stansbury v Kropf 04-02-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0398
Montezuma County District Court No. 23CV30035
Honorable Todd Jay Plewe, Judge

Jerry Stansbury, Front Row Seat, Inc., and Cortez Main, LLC,

Plaintiffs-Appellants,

v.

Verlin Kropf and Mountain West Roofing, LLC,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE TOW
Welling and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

Kelly and Fronapfel Law, PC, Jon L. Kelly, Christine M. Kelly, Dolores, Colorado, for Plaintiffs-Appellants

Fleming, Lowenberg & Cooling, Daniel J. Lowenberg, Montrose, Colorado, for Defendants-Appellees

¶ 1     In this dispute involving a commercial building's roof, plaintiffs, Jerry Stansbury, Front Row Seat, Inc., and Cortez Main, LLC (collectively, the owners),[1] appeal the trial court's order denying their claim for breach of contract and express warranty against defendants, Verlin Kropf and Mountain West Roofing, LLC.  We affirm.

## I.     Background

### A.     Factual Background

¶ 2     In 2009, the owners hired Mountain West, which Kropf owns and operates, to replace the roof on a commercial building.  Mountain West and the owners agreed to a limited fifteen-year warranty (the warranty) as part of the installation.  The warranty

---

[1] According to the allegations in the complaint, Stansbury is an officer and director of Front Row Seat, Inc., and a managing member of Cortez Main, LLC, with authority to act on its behalf, and "Plaintiffs later transferred title to the real property to their limited liability company, Cortez Main, LLC."  According to Stansbury's trial testimony, he owns the building "through an LLC" of which he is the sole owner and which was "named as a plaintiff in this action" (although he did not specifically testify that the LLC was Cortez Main, LLC).  It is, therefore, unclear whether Stansbury, as an individual, and Front Row Seats, Inc. are proper plaintiffs in this litigation.  Nevertheless, because no party raises this issue, we take the parties' lead and, as a matter of convenience only, refer to the three named plaintiffs collectively.  We offer no opinion as to whether the plaintiffs are separate legal entities.

provided that "the roof will be free from water leaks resulting from ordinary wear and tear from the elements or from improper application of the [s]ystem[2] for a period of fifteen years from the date of completion," and that Mountain West would fix — at its own expense — any leaks resulting from ordinary wear and tear or improper application during the fifteen-year period. The warranty also gave Mountain West the right "to inspect the applied system, and in the event of any defect covered by this warranty, to repair and correct the same."

¶ 3    The warranty explicitly excluded from coverage damage or failure of the roof system resulting from

> A. Natural disasters, including but not limited to floods, lightning, hurricanes, hail, [and] windstorms.
>
> . . . .
>
> C. Damage to the system resulting from cracks or openings in [s]ystem substrate.
>
> D. Improper application or failure of any component underlying the roofing membrane, such as . . . drains.

---

[2] Mountain West installed a Conklin Flexion rubber roof system, which is a single-ply roofing membrane that is commonly placed on commercial buildings.

E. Erection or construction of any additional installation on or through the [s]ystem after date of completion unless installed in a manner prescribed and accepted by [Mountain West].

F. Damage from pooled water.

¶ 4      The warranty also stated that "if [o]wner[s] shall make or permit, without prior written consent of [Mountain West], repairs, alterations, or additions to the roof which affect the [s]ystem or change the use, function, or purpose of the structure, this warranty shall become immediately null and void and of no further effect."

¶ 5      From 2010 to 2023, Mountain West responded to maintenance requests for repair of water leaks from the owners and the property manager, Kira Lekos, over a dozen times. Mountain West completed repairs on the roof during this period without charging the owners. In 2023, in response to roof leaks, the owners consulted with another roofer, Mark McLaughlin, who recommended replacing the roof. Prior to commencing litigation, the owners demanded that Mountain West replace the roof free of charge. Mountain West refused to do so.

## B. Trial Court Proceedings

¶ 6    The owners filed suit against defendants, alleging breach of contract and express warranty. During a two-day bench trial, the court heard testimony from Kropf, Stansbury, Lekos, McLaughlin, and Trent Shrock, the owner of a competing commercial roofing business.

¶ 7    Kropf testified that Mountain West had properly installed the roof on the property. Testifying as an expert, he opined that the leaks were attributable to a variety of issues, including (1) a frozen water pipe; (2) pooling water; (3) hail and wind damage; (4) bird pecks; (5) plugged drains; and (6) improper maintenance. The warranty did not cover repairs resulting from any of these issues.

¶ 8    McLaughlin testified that he observed leaks originating from drains on the property. Lekos testified that she saw "pools of stagnant water" on the roof. And Stansbury testified that, without Mountain West's permission, he put PVC pipe through the roof to drain off water.

¶ 9    Shrock inspected the roof for purposes of this litigation and testified for defendants as an expert in commercial roofing. Shrock opined that Mountain West had installed the roof properly. He

testified that his inspection showed that the roof was littered with debris, the drains were plugged, and the owners had not properly maintained the roof.

¶ 10     The owners and defendants each submitted written closing arguments following the conclusion of the bench trial.  In summarizing their argument, the owners asserted that Mountain West waived its defenses by "honor[ing] the warranty until 2023," and that, "[e]ven in the absence of waiver, [defendants] ha[d] not proven that the leaks were caused by something outside the warranty."

¶ 11     In a written order, the trial court found that Kropf's and Shrock's testimony was credible and convincing.  The court concluded that Mountain West had properly installed the roof.  It also found that Mountain West's continued servicing of the roof without charge to the owners was born out of Kropf's fear of litigation, as opposed to any admission of culpability for leaks. Finally, the court found that the leaks were caused by improper maintenance, wind damage, defective drains, and unauthorized repairs, none of which triggered repair work under the express terms of the warranty.  The court entered judgment in favor of

defendants and awarded them reasonable attorney fees and costs against the owners per the terms of the parties' contract.

¶ 12 The owners filed a motion for post-trial relief pursuant to C.R.C.P. 59. They argued that the court "did not make findings concerning nor rule on [the owners'] waiver argument." The court denied this motion, saying that its judgment "adequately addresse[d] all issues raised by [the owners]."

## II. Discussion

¶ 13 The owners contend the trial court erred when it denied their claim for breach of contract and express warranty. Specifically, they argue that the court should have found that defendants waived any defenses they may have had under the warranty. We disagree.

### A. Applicable Law and Standard of Review

¶ 14 Waiver is the intentional relinquishment of a known right or privilege. *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984). Waiver may be explicit, such as "when a party orally or in writing abandons an existing right or privilege." *Id.* Waiver can also be implicit, "as, for example, when a party engages in conduct which manifests an intent to relinquish the right or privilege, or acts inconsistently with its assertion." *Id.*

¶ 15     The parties disagree as to the applicable standard of review. The owners argue that we should review "the [t]rial [c]ourt's application of the law to the facts of the case de novo."[3]  Defendants argue that the trial court's consideration of documentary evidence, as well as witness credibility and demeanor, constitutes factual findings that we should review for clear error.

¶ 16     While the owners' contention would be accurate if the facts related to waiver were not in dispute, *see NationsBank of Ga. v. Conifer Asset Mgmt. Ltd.*, 928 P.2d 760, 763 (Colo. App. 1996), the trial court's resolution of the waiver dispute — including, specifically, determining whether Mountain West intended to waive the warranty exclusions — required the resolution of conflicting testimony and assessment of the numerous witnesses' credibility. Thus, the issue of waiver was a factual matter determined by the

_____

[3] We pause to note that, in their opening brief, the owners cite an unpublished opinion of a different division of this court. Unpublished opinions announced by a division of this court have no precedential value.  *Patterson v. James*, 2018 COA 173, ¶ 40. Moreover, with exceptions not applicable here, this court's policy prohibits citations to our opinions that are not selected for official publication.  Colo. Jud. Branch, *Court of Appeals Policies*, *Policy Concerning Citation of Opinions Not Selected for Official Publication* (2026), https://perma.cc/ZQW2-H29D.  We thus do not consider the cited case.  And we trust that this violation will not be repeated.

trial court. *Avicanna Inc. v. Mewhinney*, 2019 COA 129, ¶ 24. A trial court's "factual findings are binding unless they are so clearly erroneous as not to find support in the record." *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1383 (Colo. 1994).

### B.  Analysis

¶ 17  The owners argue that Mountain West implicitly waived the exceptions codified in the warranty when it fixed the roof free of charge despite knowing that the cause of the damage fell outside the warranty's scope. But while "an intent to waive a benefit may be implied by conduct, the conduct itself should be free from ambiguity and clearly manifest the intention not to assert the benefit." *Donahue*, 690 P.2d at 247. During the bench trial, Kropf testified that Mountain West continued to service the roof because he feared litigation if the company did not make the repairs.

¶ 18  The trial court found Kropf's testimony to be credible. Thus, there is clear record support for the court's finding that Mountain West's conduct did not signify an intent to waive the benefit of the warranty but rather stemmed from Kropf's desire to avoid conflict.

¶ 19  And because the terms of the warranty remained in effect, the record clearly demonstrates that the owners violated those terms

(and voided the warranty) when they implemented unauthorized roof repairs and failed to properly maintain the roof. Finally, the trial court correctly noted that the owners did not offer any credible evidence that Mountain West improperly installed the roof, which would have triggered the warranty requirement that the company correct the leakage at its own cost.

### III. Disposition

¶ 20    The judgment is affirmed.

JUDGE WELLING and JUDGE LIPINSKY concur.